IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KRISPY KREME DOUGHNUT CORP.,           )
                                       )
                Plaintiff,             )
                                       )
        v.                             )    1:08CV0092
                                       )
THE ADVANTAGE GROUP                    )
ENTERPRISE, INC.,                      )
                                       )
                Defendant.             )

**MEMORANDUM OPINION AND RECOMMENDATION OF MAGISTRATE JUDGE ELIASON**

This case comes before the Court on Plaintiff's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff seeks dismissal of Defendant's counterclaims for fraud in the inducement and for unfair and deceptive trade practices. These allegations arise from a business relationship between the parties, whereby Defendant agreed to assist Plaintiff and some of its franchisees with the remanufacture, storage, and resale of certain large doughnut manufacturing equipment known as the 270 Line.[1]

The facts, in the light most favorable to Defendant, are as follows. In 2006, when approximately fifty surplus 270 Lines were available because of store closures, Plaintiff approached Defendant about refurbishing the machines for its international markets. Defendant thereafter presented a program to Plaintiff and its

---

[1] Plaintiff refers to the refurbishment of the 270 Line as the "second component" of its relationship with Defendant, with a "Small Wares Program" being the first. While Plaintiff's complaint alleges claims as to both components, the counterclaims at issue here deal solely with the 270 Line.

franchisees regarding its plans for the excess inventory. At that point, Defendant contends, Plaintiff "took over the dialogue" pertaining to the program. On December 11, 2006, Defendant's President, Neal Sherman ("Sherman"), received an e-mail from Brad Wall ("Wall"), Senior Vice-President of Supply Chain for Plaintiff, detailing "the substance of what he was passing along to the involved franchisees." This message read, in pertinent part:

> Over the last 60 days, we have been in negotiations with The Advantage Group (TAG group) outlining the program structure, and addressing critical points involving the supply chain of equipment to our international market. We have reached the point where we are ready to take the next step in the process to submit the program for legal review, continue in our due diligence.
>
> The next step of the due diligence is to order one (1) re-manufactured line from the TAG group within 15 days. We will be working with TAG on this order to ensure that they feel comfortable with the deliverables and timelines that we have requested. Krispy Kreme will not take any of the net proceeds from the sale of this line. This transaction's net proceeds will be distributed to those that have already invested their equipment into the pool. This process will be executed in tandem with the completion of the contract and the establishment of the guidelines for equipment valuation and submission to the pool.
>
> This order will take 60 days to completely refurbish from the time of the order. It is our goal to have the agreed upon terms of the program, and the agreement to you for your review within 45 days. The execution of the agreement will be pending the satisfactory completion of the refurbished line.

(Am. Compl. ¶ 13.)

On February 7, 2007, Plaintiff updated its franchisees with a Powerpoint presentation regarding the status of its negotiations with Defendant. This presentation revealed that Plaintiff had previously stated that it would have a contract by the end of

January 31st.  (Am. Compl. ¶ 27.)  No year was given.  The same slide indicated that the "[c]ontract [was] in legal for review and final adjustments," that it would be executed "once [Defendant] has demonstrated the ability to perform the remanufacturing process to meet [Plaintiff's] standards," and "[e]stimated completion will be 60 days from order approximately 45 days from present." (Pl.'s Br., Ex. B.)

Defendant alleges that, despite its continued performance throughout 2007, Plaintiff "failed to finalize the written contract and failed to make any serious efforts to facilitate the sales of the remanufactured 270 lines."  (Am. Countercl. ¶ 28.)  Notably, Wall produced the proposed contract, each time with additional changes, on April 10, 2007 and May 24, 2007.  He also notified Defendant on two occasions in July 2007 that Plaintiff's CFO was undertaking the final contract review.  Then, on November 1, 2007, Sherman and Vicki Price ("Price"), one of Plaintiff's officers, issued a joint memorandum on behalf of the two companies.  The memorandum reflected the companies' agreement as to the next steps needed to deploy their equipment distribution program, including an intention to have the "Equipment Liquidation Agreement" finalized by November 15, 2007.  However, on November 2nd of that year, just one day after the joint memorandum was released, Price allegedly informed Defendant that the contract was back in outline form following review by Plaintiff's attorneys. (Am. Compl. ¶¶ 27-31.)  As of the time Plaintiff filed its pending motion, no written, executed agreement existed between the parties.

Near the end of its contract negotiations with Plaintiff, Defendant submitted two invoices for its services, including the refurbishment of the 270 Line and "Project Management" costs. These invoices, dated October 31, 2007 and January 29, 2008, totaled well over one million dollars. While Plaintiff agreed to pay the storage costs for the equipment held by Defendant, it refused to pay the invoices. (Am. Compl. ¶¶ 32-36.) On February 6, 2008, Plaintiff brought the present lawsuit claiming breach of contract, among other allegations, and seeking declaratory relief and equitable lien.[2] Defendant, in turn, counterclaimed on six counts, including the fraud in the inducement and unfair and deceptive trade practices claims challenged here.

## Discussion

Plaintiff has filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The standard for such review was recently clarified in Giarratano v. Johnson, 521 F.3d 298, 302 & 304 (4th Cir. 2008), where the court stated:

> [W]e "take the facts in the light most favorable to the plaintiff," but "we need not accept the legal conclusions drawn from the facts," and "we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir.2000); see also Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003). Additionally, the complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is <u>plausible</u> on its face." Bell Atl.

---

[2]The bulk of Plaintiff's claims pertain to its Small Wares Program, which is not at issue in the present motion.

> Corp. v. Twombly, ____ U.S. ____, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (emphasis added).
>
> . . .
>
> The conclusion that dismissal is appropriate comports with Twombly, ____ U.S. ____, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), [when the pleadings do not disclose] "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. In Twombly, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," id. at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge [ ] their claims across the line from conceivable to plausible." Id. at 1974.

Assertions of fraud face an additional hurdle in that they must comply with the heightened pleading standard of Fed. R. Civ. P. Rule 9(b). In requiring that "the circumstances constituting fraud or mistake shall be stated with particularity," the primary purpose of Rule 9(b) is to ensure that the responding party receives fair notice of the claim and its factual basis in order to begin preparing a defense. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). Therefore, a party asserting fraud must identify, with particularity, both the statements alleged to have been misleading or fraudulent and the reasons such statements were misleading. These reasons must go beyond a formulaic set of allegations; the pleading party must allege sufficient facts to support a reasonable belief that the statements in question were, in fact, misleading. Teachers' Ret. Sys. v. Hunter, 477 F.3d 162, 174-5 (4th Cir. 2007). Failure to comply with Rule 9(b)'s pleading requirements ultimately constitutes failure to state a claim under Rule 12(b)(6). Food

Lion LLC v. Schuster Marketing Corp., 382 F. Supp. 2d 793, 798 (E.D.N.C. 2005).

In the present case, Plaintiff argues that New York substantive law, rather than that of North Carolina, applies to Defendant's fraud claims, because Defendant's "alleged injuries flow from [its][] receipt, storage, maintenance, and re-manufacture of equipment at its facilities in New York." (Pl.'s Br. 8.) Defendant does not contest the assertion in its brief. Nevertheless, as Plaintiff notes, the laws of New York and North Carolina are "substantively identical" regarding fraud. (Id.) Thus, to allege a claim for fraud in either jurisdiction, a party must plead five "essential elements: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage." Breeden v. Richmond Community College, 171 F.R.D. 189, 194 (M.D.N.C. 1997)(citations omitted); see also Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370, 1373 (N.Y. 1996)(setting out the same five elements).

Courts construe the particularity requirement of Rule 9(b) to mean that the pleading party must set out the "'time, place, and contents of the alleged fraudulent misrepresentation, as well as the identity of each person making the misrepresentation and what was obtained thereby.'" Breeden, 171 F.R.D. at 195 (quoting Liner v. DiCresce, 905 F. Supp. 280, 287 (M.D.N.C. 1993)). Any alleged misrepresentation "must [also] relate to a past or existing fact,

-6-

or something equivalent thereto, as distinguished from a mere estimate or expression of opinion." Zanani v. Savad, 217 A.D.2d 696, 697, 630 N.Y.S.2d 89, 90 (1995). "[A] representation of opinion or a prediction of something which is hoped or expected to occur in the future will not sustain an action for fraud." Id.

Here, Plaintiff argues that the misrepresentations alleged by Defendant contain "aspirational," rather than promissory, language which removes them from the realm of actionable fraud. Plaintiff contends that statements regarding its "goals" did not relate to past or existing facts, but were instead "'mere estimate[s] or expression[s] of opinion.'" (Pl.'s Br. 10)(quoting Zanani, 630 N.Y.S.2d at 90). As "future expectations," such statements are not actionable as fraud claims. See Fitch v. TMF Systems Inc., 707 N.Y.S.2d 539, 541 (N.Y. App. Div. 2000).

Defendant counters that future expectations can, in fact, form the basis for a fraudulent inducement claim if the promisor had no intent to perform when the promise was made. See Landes v. Sullivan, 235 A.D.2d 657, 660, 651 N.Y.S.2d 731, 734 (1997); Leftwich v. Gaines, 134 N.C. App. 502, 508, 521 S.E.2d 717, 723 (1999). In such situations, the intent to deceive from the outset provides the past or existing factual basis for a fraud claim. Leftwich, 134 N.C. App. at 509, 521 S.E.2d at 723. To state a fraud claim under this theory, the pleading party must offer external facts which prove that the speaker spoke falsely when stating his intent. Such evidence most often includes the speaker's contemporaneous statements to others contradicting his

-7-

manifested intent or objective facts showing that his intent could not have been truthful when made. Id. at 509-510, 521 S.E.2d at 723 (defendant's dealings with a third party contradicted his statements to plaintiff). The case at hand sets forth no such evidence.

Defendant attempts to remedy this defect and show proof of intention by conjecturing that Plaintiff's true intention is shown by the fact that Plaintiff benefitted financially by not signing the contract and by using the negotiation to learn about Defendant's refurbishing process. It is possible that proof of a ploy to learn TAG trade secrets and then directly compete with TAG might be a basis for concluding that Plaintiff's statements about wanting a contract were false ab initio. However, and unfortunately for Plaintiff, the counterclaim does not forecast sufficient evidence to support such a conjecture. Defendant nowhere states that Plaintiff now employs Defendant's "secrets" or even competes with Defendant in refurbishing used machines for resale. Instead, it bases the supposed "intentional fact" on a statement made by Plaintiff in an SEC filing that it refurbishes used machines for resale. (Am. Compl. ¶ 32.) Of course, that statement could well be true because of the relationship of Plaintiff with Defendant in that endeavor. What is lacking is any proffered proof that Plaintiff is now doing so and uses secrets obtained by delaying the negotiating process. In other words,

-8-

Defendant's allegations have not crossed over from conceivable to plausible.  Giarratano, 521 F.3d at 304.[3]

In addition, Defendant's other allegations tend to disprove Defendant's conjecture of intent to deceive at the time its "fraudulent" statements were made.  Plaintiff's "continu[ing] to place additional orders with [Defendant] and have more used equipment sent to [Defendant's] facilities" is not inconsistent with Plaintiff's continuing "representations about a forthcoming contract."  It does not show Plaintiff was trying to tie up the refurbishment market.  In fact, quite the opposite is true, and tends to indicate a continuing, evolving relationship between the parties.  The mere fact that Plaintiff ultimately failed to execute a contract does not show that it had no intention of doing so from the start.

The only truly contradictory statements alleged by Defendant are those of Price, who one day co-signed a memorandum describing the finalization date of the proposed contract as November 15, 2007, and the next day described the same contract as virtually scrapped.  Unfortunately for Defendant, these representations took place at the very end of the negotiation process, and both statements were made to the same party during a very short time frame.  Under the circumstances, it would be difficult to find that these contradictory representations caused Defendant to suffer any

---

[3] In its brief, Defendant admits that Plaintiff benefitted because it could "if they desired, . . . expand upon" the remanufacture business.  (Def.'s Br. 19.)

damages, as required to sufficiently state a fraud claim under Rule 9(b).

Defendant faces an additional problem because of the very aspirational nature of Plaintiff's representations. Here, Plaintiff never "promised" to contract. Rather, the intention was always expressed as being part of a work in progress with the hope and expectation of a contract, but nothing more. It has long been recognized that "a promise to perform must be definite to be enforced." Landes, 235 A.D.2d at 660, 651 N.Y.S.2d at 734. Plaintiff stated that it was its goal to enter into a contract with Defendant if, and only if, certain conditions were met. These included Defendant's "satisfactory completion of the refurbished line," "submission of the program for legal review," and approval of the franchisees.[4] In its counterclaim, Defendant alleges that it met the first of these conditions, but it makes no claims that the others were fulfilled. This presents two problems for Defendant. First, it fails to indicate that any duty to perform arose on Plaintiff's part. See Klewin Bldg. Co., Inc. v. Heritage Plumbing & Heating, Inc., 42 A.D.3d 559, 560, 840 N.Y.S.2d 144, 145 (2007)(a condition precedent must occur before a duty to perform under an agreement arises). Second, and more importantly, whether a condition precedent has been met is a contractual question. It does not implicate fraud unless the party asserting the claim also

---

[4]Notably, the e-mail Defendant cites as an example of Plaintiff's misrepresentation merely states that Plaintiff planned to send a proposed agreement to the franchisees for their review within 45 days, not that a contract would actually be executed within that time.

pleads, according to the requirements of Rule 9(b), that the opposing party never intended to meet the condition. As described above, Defendant has failed to meet this requirement with sufficient particularity. For these additional reasons, Defendant's counterclaim for fraud in the inducement merits dismissal.

Plaintiff next urges dismissal of Defendant's claim for violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.G.S. § 75-1.1, et seq.[5] The elements of an unfair trade practices claim are that (1) one party committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that the other party was injured thereby. Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Ordinarily, some type of misrepresentation must be shown to proceed on a claim under the UDTPA. Business Cabling, Inc. v. Yokeley, 182 N.C. App. 657, 666, 643 S.E.2d 63, 69 (2007)(to recover under the UDTPA, a plaintiff must show that he or she "detrimentally relied upon a statement or misrepresentation and he or she suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation"). In the context of a contract-related claim, Defendant specifically admits that it "must show substantial aggravating circumstances attending the breach of contract" in order to sufficiently plead misrepresentation. (Reply Br. 17)(citing Branch Banking & Trust Co. v. Thompson, 107 N.C. App.

---

[5]Defendant defends against dismissal by relying on North Carolina law and, therefore, the Court will use that law as well.

53, 62, 418 S.E.2d 694, 700 (1992). In many cases, fraud allegations suffice as the required aggravating circumstances. Bhatti v. Buckland, 328 N.C. 240, 243-244, 400 S.E.2d 440, 442 (1991). However, where, as here, a fraud claim is insufficiently pled, the party claiming a violation of the UDTPA faces a far more difficult task, since it must make an independent showing that "significant aggravating circumstances" separate its claim from the ordinary breach of contract claim. See, e.g., Griffith v. Glen Wood Co., Inc., 184 N.C. App. 206, 217-18, 646 S.E.2d 550, 558-59 (2007).

In the present case, Defendant's UDTPA claim, like its fraud claim, fails to specify in sufficient detail any non-conclusory deceptive statements causing extraordinary damage, injury, oppression, or aggravation which might spare it from dismissal. In fact, Defendant's UDTPA claim does nothing more than repeat the insufficient conclusory allegations of the fraud claim where Defendant contends that, because Plaintiff never eventually entered into a contract, this shows it never intended to do so. These assertions do not suffice to constitute a bad faith misrepresentation as required to demonstrate unfair trade practices in a contract setting, as they do not demonstrate any activity which is "'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" Griffith, 184 N.C. App. at 218, 646 S.E.2d at 559 (quoting Marshall v. Miller, 302 N.C. 539,

548, 276 S.E.2d 397, 403 (1981)).  For this reason, Defendant's UDTPA claim, like its fraud claim, should be dismissed.[6]

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion to dismiss (docket no. 30) be granted.

_____
**United States Magistrate Judge**

December 11, 2008

---

[6]The Court need not reach Plaintiff's additional argument that Defendant has not alleged an injury occurring within the State of North Carolina.

-13-